# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DONNA BROWER,<br><br>                    Plaintiff,<br>        vs.<br><br>MCDONALD'S CORPORATION, a Foreign<br>Corporation licensed to do business in Nevada,<br><br>                    Defendant. | Case No.: 2:19-cv-02099-GMN-BNW<br><br>**ORDER** |

Pending before the Court is Defendant McDonald's Corporation's ("Defendant's") Motion for Summary Judgment, (ECF No. 79).[1]  Plaintiff Donna Brower ("Plaintiff") filed a Response, (ECF No. 83),[2] and Defendant filed a Reply, (ECF No. 87).

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.     BACKGROUND

This case arises from Defendant's alleged wrongful termination of Plaintiff's employment and alleged violations of the Americans with Disabilities Act ("ADA"), NRS § 613.330, and the Family Medical Leave Act ("FMLA"). (*See generally* Compl., Ex. A-1 to Pet. for Removal, ECF No. 1-2).  The sequence of relevant events is largely undisputed.

### A.  Facts Relating to Plaintiff's Employment and Termination

Plaintiff worked for Defendant for approximately twenty-eight years under several different job titles. (*Id.* ¶ 8, Ex. A-1 to Pet. for Removal).  At the time her employment was

---

[1] Defendant filed two duplicate, unredacted versions of the Motion for Summary Judgment, (ECF Nos. 70 & 71). These motions are identical to the present motion.  Accordingly, this ruling applies to those motions as well.
[2] Plaintiff filed an unredacted version of her Response, (ECF No. 84).

terminated, Plaintiff was an Operations Consultant ("Ops Consultant") for Defendant, a position she held for approximately fifteen years. (*Id.*, Ex. A-1 to Pet. for Removal).  As an Ops Consultant, Plaintiff was responsible for running several company-owned restaurants in Las Vegas. (Excerpts from Dep. of Jeremy Milne Burningham ("Burningham Dep.") 160:18–20; 15:14–16:1, Ex. D to Mot. Summ. J., ECF No. 79-4).

In 2018, Defendant sold three company-owned restaurants in the Las Vegas market. (Decl. Jackie Bunting ¶ 5, Ex. O to Mot. Summ. J., ECF No. 79-15).  As a result, Defendant eliminated one Ops Consultant position in the summer of 2018. (Excerpts Dep. Fernando De La Cruz ("De La Cruz Dep.") 47:23–48:8, Ex. E to Mot. Summ. J., ECF No. 79-5).  Because Plaintiff performed lower than her colleagues, Defendant chose to eliminate Plaintiff's position. (De La Cruz Dep. 48:9–19, Ex. E to Mot. Summ. J.); (Ex. 7 from Dep. of Fernando De La Cruz, Ex. Q to Mot. Summ. J., ECF No. 79-17).

On July 31, 2018, Plaintiff met with her operations manager and direct supervisor, Jeremy Burningham, along with her HR Manager, Fernando de la Cruz. (Burningham Dep. 112:13–113:17, Ex. D to Mot. Summ. J.); (Excerpts from Dep. of Donna Brower ("Brower Dep.") 40:10–22, Ex. A to Mot. Summ. J., ECF No. 79-1); (Mot. Summ. J. 5:12–14).  At this meeting, Plaintiff was informed that her position was being eliminated due to restructuring. (Compl. ¶ 10, Ex. A-1 to Pet. for Removal); (Burningham Dep. 113:5–17, Ex. D to Mot. Summ. J.).  Plaintiff was offered two choices: (1) be laid off with a severance package; or (2) accept a demotion to general manager. (Compl. ¶ 10, Ex. A-1 to Pet. for Removal); (Burningham Dep. 113:5–17, Ex. D to Mot. Summ. J.).  The demotion would include a salary reduction from $73,130 to $67,500. (July 30, 2018 email, Ex. V to Mot. Summ. J., ECF No. 79-22).  If Plaintiff took the demotion as general manager, she would have kept her company car; otherwise, Plaintiff could either purchase the car or return it on her last day. (De La Cruz Dep.

///

1  113:2–4, Ex. E to Mot. Summ. J.); (August 6, 2018 email, Ex. X to Mot. Summ. J., ECF No.
2  79-24).

3       The July 31 meeting ended without Plaintiff making a decision because she wanted to
4  review the severance package. (Brower Dep. 236:21–237:9, Ex. A to Mot. Summ. J.).  That
5  same day, Mr. De La Cruz requested a severance package for Plaintiff. (July 31, 2018, email,
6  Ex. U to Mot. Summ. J., ECF No. 79-21).

7       Mr. De La Cruz called Plaintiff on August 2, 2018, to "touch base" with her on her
8  decision. (De La Cruz Dep. 93:10–13, Ex. E to Mot. Summ. J.).  The parties dispute the details
9  of this conversation.  In a deposition, Mr. De La Cruz stated that when he asked Plaintiff
10 whether she was going to take the demotion, Plaintiff said, "No, I think it's time for me to
11 move on.  It's my time to move on." (*Id.* 93:10–14, Ex. E to Mot. Summ. J.).  Mr. De La Cruz
12 further stated the following:

13       And I clarified with her and I said, Well, Donna what I'm hearing you say is that
         you don't want the general manager position [].  Is that correct?  And she said,
14       Yeah.  I'm just going to move on.  And I said, Okay.  So you want to go with the
         severance package?  And she said, Yeah.
15

16 (*Id.* 93:15–20, Ex. E to Mot. Summ. J.).  According to Defendant, Mr. De La Cruz reported to
17 Mr. Burningham that Plaintiff refused the demotion on August 2, 2018. (*See* Burningham Dep.
18 120:16–24, Ex. D to Mot. Summ. J.).

19       Plaintiff, however, denies that she refused the demotion. (*See* Resp. 6:19–24).  Plaintiff
20 "testified adamantly that she wanted to see the severance package before making a decision."
21 (*Id.* 7:2–2).  In her deposition, Plaintiff said she "repeatedly asked [Mr. De La Cruz] about the
22 severance package" because she was concerned as a single mother about the substance and
23 duration of the benefits she would receive under the severance package. (Brower Dep. Excerpts
24 238:9–24, Ex. 11 to Resp., ECF No. 84-11)  When asked if she told Mr. De La Cruz it was
25 time to move on, Plaintiff said she "can't recall it." (*Id.* 240:7–12, Ex. 11 to Resp.).

1   On August 9, 2018, Plaintiff again asked to see the termination package and documents.

2   (*See* Text messages between De La Cruz and Brower, Ex. W to Mot. Summ. J.).  That same

3   day, Plaintiff called the Employee Service Center ("ESC") and stated that her position was

4   being eliminated and would be terminated on August 15, 2018. (Unmarked Dep. Ex. used by

5   Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).  On August 10, 2018, Mr. De La

6   Cruz emailed Plaintiff the severance package and stated that Plaintiff's last day would be

7   August 15, 2018. (08/10/18 email, Ex. DD to Mot. Summ. J., ECF No. 79-30).  The email also

8   included information about returning the company property in Plaintiff's possession, including

9   the company car. (*Id.*, Ex. DD to Mot. Summ. J.).

10   On August 10, 2018, Mr. De La Cruz sent Plaintiff another email stating that he would

11   "extend the time given the circumstances for the severance plan." (08/10/18 email, Ex. EE to

12   Mot. Summ. J., ECF No. 79-31).  Additionally, the email stated that Mr. Burningham agreed

13   that Plaintiff could stay out of work due to Plaintiff's health condition, discussed below, for the

14   remaining time, and Plaintiff would continue to be paid until August 15, 2018. (*Id.*, Ex. EE to

15   Mot. Summ. J.).  The email again reiterated that Mr. De La Cruz would need to pick up all

16   company assets in Plaintiff's possession. (*Id.*, Ex. EE to Mot. Summ. J.).  Plaintiff's

17   employment with Defendant was terminated on August 15, 2018. (Compl. ¶ 14, Ex. A-1 to Pet.

18   for Removal).

19   **B.  Facts Relevant to Plaintiff's Workers' Compensation and Disability Claims**

20   On July 24, 2018, Plaintiff hurt her back lifting a box of french fries while working but

21   did not immediately report the work-related injury. (Compl. ¶ 9, Ex. A-1 to Pet. for Removal).

22   On August 6, 2018, Plaintiff experienced pain in her back and left leg while on vacation in

23   California. (Brower Dep. 258:23–259:5, Ex. A to Mot. Summ. J.).  Plaintiff went to a medical

24   center in San Diego and initially thought that both her back pain and her leg pain was related to

25   the July 24 incident. (*Id.* 258:23–260:4, Ex. A to Mot. Summ. J.).  Plaintiff called Defendant's

Risk Management office to report the July 24 injury but did not complete a workers' compensation claim at this time. (08/10/18 Email – Exhibit 25 to Dep. of Donna Brower at 000521, Ex. AA to Mot. Summ. J., ECF No. 79-27).  On August 7, 2018, Plaintiff drove back to Las Vegas and went directly to the hospital where she was diagnosed with a blood clot. (Brower Dep. 261:17–262:21, Ex. A to Mot. Summ. J.).  The doctor concluded that the blood clot in her leg was unrelated to her back pain from the July 24 incident. (*Id.* 260:1–4, Ex. A to Mot. Summ. J.).

On August 9, 2018, Plaintiff called the Employee Service Center ("ESC") regarding short-term disability ("STD") because of her blood clot.[3] (Excerpts from Dep. of Tonya James 9:5–11; 14:9–21, Ex. BB to Mot. Summ. J., ECF No. 79-28).  This was the same call during which Plaintiff stated her employment would terminate on August 15, 2018. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep. at 001354, Ex. CC to Mot. Summ. J., ECF No. 79-29).  The representative explained that Plaintiff would not meet the requirements for STD because to qualify for STD, an employee must first be off work for eleven consecutive days. (*Id.*, Ex. CC to Mot. Summ. J.).  Because Plaintiff's employment would end in fewer than eleven days, Plaintiff would not be able to meet this requirement. (*Id.*, Ex. CC to Mot. Summ. J.).

On August 10, 2018, Plaintiff filed her worker's compensation claim. (WC Claim Form, Ex. FF to Mot. Summ. J., ECF No. 79-32).  The form incorrectly noted the date of injury as August 6, 2018, but Plaintiff acknowledges that the actual date of injury was July 24, 2018. (*Id.*, Ex. FF to Mot. Summ. J.); (*see* Brower Dep. 270:10–15, Ex. A to Mot. Summ. J.).

On August 14, 2018, Plaintiff visited her doctor regarding her blood clot condition. (Brower Dep. 264:10–11, Ex. A to Mot. Summ. J.).  The doctor recommended that Plaintiff

---

[3] Plaintiff's medical records state that Plaintiff was unable to return to work through February 7, 2019. (Medical Records at 2, Ex. 5 to Resp., ECF No. 86-5).

stay off work until November 6, 2018. (*Id.* 264:15–18, Ex. A to Mot. Summ. J.).  Plaintiff then

submitted an STD application signed by her doctor.[4] (STD Application, Ex. GG to Mot. Summ.

J., ECF No. 79-33).

Plaintiff also emailed Mr. Burningham about medical leave on August 14, 2018.

(08/14/2018 Email, Ex. HH to Mot. Summ. J., ECF No. 79-34).  Specifically, Plaintiff wanted

to know if her medical leave was being covered under the workers compensation claim. (*Id.*,

Ex. HH to Mot. Summ. J.).  If it was not covered, Plaintiff indicated that she would like to file a

Family Medical Leave Act ("FMLA") form "so [she] could insure [her] rights are covered

pursuant to [her] lawyer's advise [sic]." (*Id.*, Ex. HH to Mot. Summ. J.).  Defendant's FMLA

policy instructs employees to call ESC to apply for FMLA leave. (Excerpts of FMLA policy at

000616, Ex. II to Mot. Summ. J., ECF No. 79-35)  Plaintiff called ESC to request FMLA leave

on August 20, 2018. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep. at

001354, Ex. CC to Mot. Summ. J.).

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

---

[4] The ESC received the STD request form at 8:57 PM Central Time on August 14, 2018. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep. at 001354, Ex. CC to Mot. Summ. J.).  Because there is a twenty-four-to-forty-eight-hour window to create a case after ESC receives an STD request, Plaintiff's paperwork was not reviewed until August 16, 2018. (Excerpts from Dep. of Tonya James 12:15–13:13, Ex. BB to Mot. Summ. J., ECF No. 79-28).

differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is

1   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

2   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

3   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on

4   denials in the pleadings but must produce specific evidence, through affidavits or admissible

5   discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

6   1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical

7   doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The

8   mere existence of a scintilla of evidence in support of the plaintiff's position will be

9   insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid

10  summary judgment by relying solely on conclusory allegations that are unsupported by factual

11  data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

12  beyond the assertions and allegations of the pleadings and set forth specific facts by producing

13  competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

14      At summary judgment, a court's function is not to weigh the evidence and determine the

15  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

16  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

17  in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is

18  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

19  ## III.   **DISCUSSION**

20      Defendant seeks summary judgment on all claims. (*See generally*, Mot. Summ. J.).

21  Plaintiff concedes that she does not have sufficient evidence to support her Title VII claims.

22  (Resp. 17:10–15). Accordingly, the Court grants summary judgment on Plaintiff's Title VII

23  claims. Therefore, only three claims remain in dispute: (1) wrongful termination in violation of

24  Nevada public policy; (2) violation of the ADA and NRS § 613.330; and (3) violation of the

25  FMLA. The Court discusses each in turn.

### A. Wrongful Termination

Plaintiff alleges Defendant wrongfully terminated her in retaliation for filing a workers' compensation claim and to avoid paying disability benefits. (Compl. ¶¶ 16–33, Ex. A-1 to Pet. for Removal).  It is undisputed that Defendant made the decision to eliminate Plaintiff's position before Plaintiff made any claims about workers' compensation or disability benefits. (Resp. 2:11–14).  It is also undisputed that Defendant offered Plaintiff a choice between a demotion or termination with a severance package. (*Id.* 2:15–18).  The disputed issue is whether Defendant withdrew its offer of a demotion in retaliation for Plaintiff's workers' compensation or disability claims or whether Plaintiff rejected the demotion offer. (*See id.* 17:20–22).

Nevada is an at-will employment state, meaning an employee may be fired "for any reason at the will of an employer." *Hirschhorn v. Sizzler Restaurants Intern'l, Inc.*, 913 F.Supp. 1393, 1401 (D. Nev. 1995).  But Nevada nonetheless recognizes the tort of wrongful termination if an employer fires an employee "for reasons which violate public policy." *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991).  For example, an employer cannot legally fire an employee because the employee filed a workers' compensation claim. *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev. 1984).  "However, Nevada courts have specifically elected not to recognize a common law claim for wrongful termination in violation of public policy when there are sufficient statutory remedies redressing the wrong." *Hirschhorn*, 913 F.Supp. at 1402.  Thus, "[i]t is not surprising that Nevada law fails to address the availability of a wrongful discharge claim based upon allegations that the employer terminated the plaintiff for exercising his short-term disability benefits because the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1462, extensively covers employer-provided benefit plans." *Kegel v. Brown & Williamson Tobacco Corp.*, No. 3:06-cv-00093-LRH-VPC, 2009 WL 3125482, at *4 (D. Nev. Sept. 24, 2009).

Here, Defendant submitted evidence demonstrating that Plaintiff rejected the demotion offer before she filed any claims for workers' compensation or disability benefits. Mr. De La Cruz stated in his deposition that on August 2, 2018, Plaintiff told him it was time for her to move on. (De La Cruz Dep. 93:8–14, Ex. E to Mot. Summ. J.). Mr. De La Cruz further stated that he clarified with Plaintiff that she did not want to accept the demotion and wanted to go with the severance package. (*Id.* 93:15–21, Ex. E to Mot. Summ. J). Other evidence confirms Mr. De La Cruz's version of events. Most tellingly, Plaintiff called ESC on August 9, 2018, and said she would be terminated on August 15, 2018. (Unmarked Dep. Ex. used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.). This demonstrates that Plaintiff chose the termination option. Thus, the burden shifts to Plaintiff to show that a dispute of material fact exists.

Plaintiff asserts that she did not reject the offer of a demotion. (Resp. 6:23–7:5). Rather, she argues that Defendant withdrew its offer of a demotion "in retaliation for her filing of her workers compensation claim." (*Id.* 18:13–15). Amidst a slew of rhetorical questions, (Resp. 15:28–16:22), Plaintiff reiterates one argument in an attempt to rebut Defendant's evidence: Plaintiff claims that she asked for and should have received more time to consider her options. (*Id.* 8:22–26). In response to Mr. De La Cruz's email on August 10, 2018, Plaintiff stated that she wanted to review the agreement further. (08/10/18 Email, Ex. EE to Mot. Summ. J.). But as Defendant states in its Reply, Plaintiff's email did not dispute the content of Mr. De La Cruz's August 10, 2018, email, which again asserted that Plaintiff's last day would be August 15, 2018, and that she would need to return all company assets by that date. (Reply ¶ 10). Rather, Plaintiff's email response "only requested (1) clarification of the terms of the severance package, and (2) more time to review the severance package." (*Id.*). Indeed, Plaintiff's email response did not mention anything about the demotion offer. (*See* 08/10/18 Email, Ex. EE to Mot. Summ. J.).

Plaintiff additionally points to text messages she exchanged with Mr. De La Cruz as evidence that she was still considering her options and had not rejected the demotion. (Resp. 3:13–18).  The text messages discuss Plaintiff's company vehicle number and the process for returning or purchasing the vehicle. (*See id.*; Text messages between De La Cruz and Brower, Ex. W to Mot. Summ. J., ECF No. 79-23).  But these messages convey only that Plaintiff had not made a decision regarding her company vehicle; if she chose termination, Plaintiff was given the choice between buying and returning the vehicle. (August 6, 2018 email, Ex. X to Mot. Summ. J., ECF No. 79-24).  Thus, this evidence is not probative of the issue at hand. Moreover, even if these text messages may somehow cast some metaphysical doubt on whether Plaintiff rejected the demotion, this evidence cannot overcome Plaintiff's uncontested acknowledgement that she was going to be terminated on August 15, 2018. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).

Viewing the evidence in the light most favorable to Plaintiff, the evidence supports the conclusion that Plaintiff already rejected the demotion before her August 10, 2018, email, and simply wished to clarify and review the terms of her termination agreement.  First, Plaintiff does not present any evidence to rebut Defendant's evidence that she rejected the demotion during the August 2, 2018, phone call.  In her deposition, Plaintiff did not deny telling Mr. De La Cruz that it was time for her to move on, but rather said she could not recall whether she said it.[5] (Brower Dep. 240:7–12, Ex. A-1 to Resp.).  Second, Plaintiff herself acknowledged that her employment would terminate on August 15, 2018, when she called ESC on August 9, 2018, the day before she allegedly asked for more time to consider her options. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).  Third,

///

---

[5] Plaintiff also stated that being a general manager was not her career goal, which further reinforces Defendant's argument that she rejected the demotion to general manager. (Brower Dep. 235:3–5, Ex. 11 to Resp.).

Plaintiff never expressed surprise or confusion about her anticipated termination date of August 15, 2018. (*See* 08/10/18 Email, Ex. EE to Mot. Summ. J.).

Because Plaintiff alleges that Defendant terminated her employment in retaliation for filing a workers' compensation claim and to avoid paying disability benefits, Plaintiff will have to prove that her termination occurred because of—and necessarily, *after*—she brought her workers' compensation claim or applied for STD benefits on August 10, 2018, and August 14, 2018, respectively.  Defendant submitted evidence to the Court demonstrating that Plaintiff chose the termination option *before* Plaintiff filed her claims for workers' compensation or disability benefits. (*See* Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.) (noting that on August 9, 2018, Plaintiff stated her employment would terminate on August 15, 2018).  Plaintiff has not provided any evidence to the contrary and does nothing more than cast "metaphysical doubt" on the facts surrounding her termination. *See Orr*, 285 F.3d at 783.  Accordingly, the Court GRANTS summary judgment for Defendant on Plaintiff's wrongful termination claims.

### B.  ADA and NRS § 613.330

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a).  To make a claim for discrimination under the ADA, a plaintiff must show:

> (1) that he [or she] is a disabled person within the meaning of the ADA; (2) that he [or she] is qualified, that is, with or without reasonable accommodation (which he [or she] must describe), he [or she] is able to perform the essential functions of the job; and (3) that the employer terminated him [or her] because of his [or her] disability.

*Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).  Similarly, under Nevada law, "it is an unlawful employment practice for an employer . . . to discharge any person . . . because of his or her . . . disability." NRS § 613.330(1)(a).

Plaintiff alleges that Defendant withdrew the demotion to general manager because of her medical status, in violation of the ADA and NRS § 613.330. (Compl. ¶¶ 51–60, Ex. A-1 to Pet. for Removal); (Resp. 23:26–28).  As discussed above, Defendant presented evidence demonstrating that Plaintiff rejected the demotion to general manager before Plaintiff asserted any claims about her medical status, satisfying its burden as the moving party.  Plaintiff failed to present any evidence that Defendant in fact withdrew the demotion.  Accordingly, Plaintiff's claim that Defendant terminated her in violation of the ADA and NRS § 613.330 must be dismissed.

Plaintiff also alleges that Defendant failed to grant Plaintiff an accommodation by giving her more time to decide between the severance package or demotion or by granting her medical leave. (Resp. 24:22–26).[6]  But the undisputed facts demonstrate that Defendant continued to pay Plaintiff until August 15, 2018, the termination date decided upon prior to Plaintiff's medical complications, even though Defendant did not require her to work after the complications arose. (08/10/18 Email, Ex. EE to Mot. Summ. J.).  Furthermore, Mr. De La Cruz told Plaintiff that she could have additional time to review the severance plan.  This extension appears to have been limited to reviewing the severance plan, not deciding between the severance plan or the demotion, because Plaintiff had already rejected the demotion. (*See id.*, Ex. EE to Mot. Summ. J.).  Plaintiff has not presented any evidence to the contrary.  Accordingly, the Court GRANTS summary judgment as to Plaintiff's ADA and NRS § 613.330 claims.

## C. FMLA

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for [] family members who are ill, or to care for new babies."

---

[6] The only accommodation Plaintiff alleged in her Complaint was time off from work, which Defendant appears to have accommodated. (Compl. ¶ 53, Ex. A-1 to Pet. for Removal); (08/10/18 Email, Ex. EE to Mot. Summ. J.).

*Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001).  To the extent Plaintiff argues she was fired in retaliation for seeking FMLA benefits, this claim fails for the same reasons detailed above.  Plaintiff's doctor did not submit an STD benefits application until August 14, 2018, and Plaintiff did not call ESC to inquire about applying for FMLA benefits until August 20, 2018. (Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).  Plaintiff failed to rebut Defendant's evidence that Plaintiff was told her employment would terminate on August 15, 2018—and Plaintiff rejected an alternative demotion—before these dates.

Moreover, Defendant presented evidence negating an essential element of Plaintiff's FMLA claim.  To make her prima facie case, Plaintiff must establish that: "(1) [she] was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [she] was entitled to leave under the FMLA, (4) [she] provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [she] was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).  Plaintiff erroneously asserts that "none of the elements are in dispute" even though Defendant submitted uncontroverted evidence that Plaintiff was not eligible for FMLA leave. (Resp. 21:27–22:5); (*see* Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).

The FMLA "does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Sanders*, 657 F.3d at 778 (quoting *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).  Thus, only active employees are eligible for FMLA leave.  Plaintiff argues that she should have been placed on leave on August 6, 2018. (Resp. 22:16–19.)  But by August 6, 2018, Plaintiff's termination date of August 15, 2018, was already set.  Thus, there could have been no expectation that she would return to work after any provided leave ended.  Moreover, employees must *apply* for FMLA leave; an employer does not simply place an employee on leave as soon as the

employee notifies the employer of a leave-qualifying event. (Excerpts of FMLA policy at 000616, Ex. II to Mot. Summ. J.); *see Sanders*, 657 F.3d at 778 (noting that employer must have denied FMLA benefits to state a claim under the FMLA).  The undisputed evidence demonstrates that Defendant did not receive Plaintiff's application for FMLA leave until after Plaintiff's employment was already terminated. (*See* Unmarked Dep. exhibit used by Plaintiff during Tonya James Dep., Ex. CC to Mot. Summ. J.).

Defendant met its burden as the moving party by presenting evidence negating an essential element Plaintiff must prove at trial.  Plaintiff fails to provide any evidence to the contrary.  Accordingly, the Court GRANTS summary judgment regarding Plaintiff's FMLA claim.

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 79), as well as the duplicate motions, (ECF Nos. 70 & 71), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint, (ECF No. 1-2), is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter Judgment accordingly and close the case.

**DATED** this ___22___ day of November, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court